IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| THE CATHOLIC BENEFITS ASSOCIATION LCA; THE CATHOLIC INSURANCE COMPANY, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. CIV-14-685-R |
| SYLVIA M. BURWELL, Secretary of the United States Department of Health and Human Services et al., | ) ) ) ) ) ) | |
| Defendants. | ) | |

# ORDER

Before the Court is Plaintiffs' Motion for Preliminary Injunction. Doc. No. 30. This motion stems from an action challenging a provision of the Affordable Care Act ("ACA")[1] and the regulations issued under it, which mandate that certain employers provide health coverage for contraceptives to their employees, or face substantial fines for failing to do so ("the Mandate"). On June 4, 2014, the Court entered an Order enjoining Defendants from "any effort to apply or enforce, as to [certain] members of the Catholic Benefits Association LCA" the provisions of the ACA requiring them to provide their employees health insurance coverage for contraceptives. *Catholic Benefits Ass'n*

---

[1] The ACA is composed of the Patient Protection and Affordable Care Act, Pub. L. No. 111-148, 124 Stat. 119 (2010), and the Health Care and Education Reconciliation Act, Pub. L. No. 111-152, 124 Stat. 1029 (2010).

*LCA v. Sebelius*, 2014 WL 2522357, at *10 (W.D. Okla. June 4, 2014).[2] Plaintiffs filed this motion for preliminary injunction for two reasons: (1) to protect Catholic employers that have joined and continue to join the Catholic Benefits Association LCA ("CBA") after June 4 that are not covered by the Court's June 4 Order, and (2) to protect all CBA members from the interim final regulations issued by the Department of Health and Human Services ("HHS"), Labor, and the Treasury ("the Departments") on August 27, 2014. Doc. No. 33, at 8.

CBA is an Oklahoma nonprofit limited cooperative association that was organized in relevant part to assist Catholic employers in providing health benefits to their respective employees in a manner consistent with Catholic values. Doc. No. 32, ¶ 31. CBA members "adhere in belief and practice to the teachings of the Catholic Church on contraception, abortion, sterilization, and related counseling." Doc. No. 32, ¶ 82. They assert that the Mandate violates their sincerely held religious beliefs. *Id.* ¶ 289. Plaintiffs have brought this action against Sylvia Burwell, Secretary of the U.S. Department of Health and Human Services, along with other government officials and agencies, advancing constitutional and statutory challenges to the Mandate. In the present motion, Plaintiffs seek a preliminary injunction on behalf of certain CBA members against Defendants' collective ability to enforce the Mandate against them, basing their arguments on the Religious Freedom Restoration Act ("RFRA"), the Establishment Clause, and the Administrative Procedure Act ("APA"). Doc. No. 30, at 2.

---

[2] This June 4 Order was entered in a case with substantially the same parties as the present case. Following this Court's June 26 Order denying the plaintiffs' motion to amend the June 4 Order to extend preliminary injunctive relief to members that have joined Catholic Benefits Association LCA since June 4, Plaintiffs filed this separate action in order to obtain such relief. Doc. No. 32, ¶¶ 24-26.

## I. ACA

Under 42 U.S.C. § 300gg-13(a)(4), certain employer health plans must cover "preventive care and screenings" for women. Based on the guidelines adopted by the Health Resources and Services Administration, "preventive care" includes "[a]ll Food and Drug Administration approved contraceptive methods, sterilization procedures, and patient education and counseling for all women with reproductive capacity." Health Resources & Services Administration, "Women's Preventive Services Guidelines," http://www.hrsa.gov/womensguidelines (last visited Dec. 18, 2014). If an employer subject to the Mandate fails to provide the required contraceptive coverage in its health plan, then it faces fines of $100 per day per employee, or, in other words, up to $36,500 per year per employee. *See* 26 U.S.C. § 4980D(b)(1). Further, if the employer fails to provide any health plan whatsoever to its employees, it faces fines of $2,000 per year per full-time employee (less 30 employees). *Id.* § 4980H(a), (c)(1), (c)(2)(D)(i)(I).

The regulations and guidelines issued under the Mandate provide an exemption for certain "religious employers." 45 C.F.R. § 147.131(a); 79 Fed. Reg. 51,092-01; 51,092. For purposes of the regulations, "religious employer" is narrowly defined as a nonprofit entity referred to in 26 U.S.C. § 6033(a)(3)(A)(i) or (iii), part of the Internal Revenue Code. 45 C.F.R. § 147.131(a); 78 Fed. Reg. 39,870, 39,873-74. The groups referred to in those subsections include "churches, their integrated auxiliaries, and conventions or associations of churches," and "the exclusively religious activities of any religious order."

The regulations further provide for an accommodation for certain non-exempt employers that do not want to provide coverage for the required contraceptive services based on religious objections. 78 Fed. Reg. 39,870-01; 39, 874. An employer is an "eligible organization" for this accommodation if it satisfies the following requirements: (1) it opposes providing coverage for some or all of the required contraceptive services due to religious objections; (2) it is a nonprofit entity; (3) it "holds itself out as a religious organization;" and (4) it "self-certifies, in a form and manner specified by the Secretaries of Health and Human Services and Labor, that it satisfies the [previous three] criteria." 26 C.F.R. § 54.9815-2713A(a); 29 C.F.R. § 2590.715-2713A(a); 45 C.F.R. § 147.131(b); 78 Fed. Reg. at 39,874.

At the time the Court issued its June 4 Order, in order to meet the self-certification requirement, an employer had only one option. It had to execute and deliver EBSA Form 700 to its issuer, or if the employer was self-insured, to its third-party administrator ("TPA"). 78 Fed. Reg. at 39,875. If a nonprofit religious employer executed and delivered EBSA Form 700 to its issuer or TPA, the issuer or TPA would then provide notice to the organization's employees that it would be providing contraceptive services to these employees. 26 C.F.R. § 54.9815-2713A(d); 29 C.F.R. § 2590.715-2713A(d); 45 C.F.R. § 147.131(d).

On July 3, 2014, the Supreme Court issued an interim order in *Wheaton College v. Burwell*, 134 S. Ct. 2806, 2807 (2014), holding that the college "need not use the form prescribed by the Government, EBSA Form 700, and need not send copies to health insurance issuers or third-party administrators" in order to obtain a preliminary injunction

against enforcement of the Mandate. It is sufficient if the college "informs the Secretary of Health and Human Services in writing that it is a nonprofit organization that holds itself out as religious and has religious objections to providing coverage for contraceptive services." *Id.*

"[I]n light of" this interim order, on August 27, 2014, the Departments issued interim final regulations to "augment" the above regulations. 79 Fed. Reg. 51,092-01, 51,092. In addition to submitting ESBA Form 700 to its issuer or TPA, the new rules provide for an additional process by which an organization may notify HHS directly in writing of its religious objection. 26 C.F.R. § 54.9815-2713AT(c)(1); 29 C.F.R. § 2590.715-2713A(c)(1); 45 C.F.R. § 147.131(c)(1); 79 Fed. Reg. at 51,094. This notice must include the organization's name; the basis on which it qualifies for the accommodation; the nature of its objection; the plan name and type; and the name and contact information for the plan's TPAs and health insurance issuers. 26 C.F.R. § 54.9815-2713AT(c)(1)(ii); 29 C.F.R. § 2590.715-2713A(c)(1)(ii); 45 C.F.R. § 147.131(c)(1)(ii); 79 Fed. Reg. at 51,094-95.

This above information is "the minimum information necessary for the Departments to determine which entities are covered by the accommodation, to administer the accommodation, and to implement the policies in the July 2013 final regulations." 79 Fed. Reg. at 51,095. Once the objecting organization provides such notice, it need not "contract, arrange, pay, or refer for such coverage." 79 Fed. Reg. at 51,095. After the organization sends its notice to HHS, the Department of Labor will send a notification to the plan's issuer or TPA, informing them of the organization's

religious objection and of the issuer's or TPA's obligations regarding contraceptive benefits. 26 C.F.R. § 54.9815-2713AT(c)(1)(ii); 29 C.F.R. § 2590.715-2713A(c)(1)(ii); 45 C.F.R. § 147.131(c)(1)(ii); 79 Fed. Reg. at 51,094-95. These obligations include the responsibility to provide the contraceptive services that the objecting organization objects to providing. 26 C.F.R. § 54.9815-2713AT(b)(2); 29 C.F.R. § 2590.715-2713A(b)(2); 45 C.F.R. § 147.131(d); 79 Fed. Reg. 51,092-01; 51,095. Plaintiffs argue that this new process still imposes a substantial burden on CBA members' exercise of their religious beliefs, because the effect is the same: they must still initiate the process that results in the insurers or TPAs providing contraceptive coverage to their employees. Doc. No. 31, at 12-13.

## II. Standard

To prevail on their Motion for Preliminary Injunction, Plaintiffs must show: "(1) a likelihood of success on the merits; (2) a likely threat of irreparable harm to the movant[s]; (3) the harm alleged by the movant[s] outweighs any harm to the non-moving party; and (4) an injunction is in the public interest." *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1128 (10th Cir. 2013), *aff'd*, *Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751 (2014) (citing *Winter v. NRDC*, 555 U.S. 7, 20 (2008)). Because this preliminary injunction seeks to alter the status quo, Plaintiffs must make a "strong showing both with regard to the likelihood of success on the merits and with regard to the balance of harms." *Awad v. Ziriax*, 670 F.3d 1111, 1125-26 (10th Cir. 2012) (quoting *Summum v. Pleasant Grove*, 483 F.3d 1044, 1048-49 (10th Cir. 2007), *rev'd on other*

6

*grounds*, 555 U.S. 460 (2009)). For irreparable injury and public interest, Plaintiffs must show only that these two requirements weigh in their favor. *Id.* at 1126.

## III. Analysis

### A. Likelihood of Success on the Merits Under RFRA

Under RFRA, the federal government is prohibited from substantially burdening a person's exercise of religion, unless the government can demonstrate that the challenged action "constitutes the least restrictive means of serving a compelling government interest." *Hobby Lobby*, 134 S. Ct. at 2759. Therefore, in order to establish a claim under RFRA, a plaintiff must first show "that the government substantially burdens a sincere religious exercise." *Hobby Lobby*, 723 F.3d at 1125-26 (citation omitted). If the plaintiff can establish this, then the burden shifts to the government "to show that the 'compelling interest test is satisfied through application of the challenged law to the person—the particular claimant whose sincere exercise of religion is being substantially burdened.'" *Id.* at 1126 (quoting *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 420 (2006)) (internal quotation marks omitted). This burden-shifting framework applies even at the preliminary injunction stage. *Id.* (citing *Gonzales*, 546 U.S. at 429). In this case, Defendants do not challenge the sincerity of CBA members' religious beliefs. But Defendants do argue that their religious beliefs are not substantially burdened, and, even if they are substantially burdened, the government can satisfy the compelling interest test.

### 1. Substantial Burden

The Court will first determine if the government's enforcement of the challenged provisions of the ACA and accompanying regulations imposes a substantial burden on CBA members' exercise of their religion. Under RFRA, an act by the government imposes a substantial burden on religious exercise if it "(1) requires participation in an activity prohibited by a sincerely held religious belief, (2) prevents participation in conduct motivated by a sincerely held religious belief, or (3) places substantial pressure on an adherent . . . to engage in conduct contrary to a sincerely held religious belief." *Hobby Lobby*, 723 F.3d at 1138 (quoting *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1315 (10th Cir. 2010)) (internal quotation marks omitted). Only the third prong concerning "substantial pressure" is applicable in this case. *See id.*

CBA members believe in the Catholic teaching that any artificial interference with the creation and nurture of new life is wrong. Doc. No. 32, ¶ 5. Thus, it would be contrary to this belief for them to provide health benefits to their employees that include coverage for contraception, abortion-inducing drugs and devices, surgical abortion, sterilization, and related counseling. *Id.* Furthermore, they believe that the accommodation, both pre- and post-augmentation, forces them to play a central role in the provision of the contraceptive services to which they religiously object. Plaintiffs argue that both accommodations require CBA members to cause another "to provide that which their Catholic faith will not permit." Doc. No. 33, at 18. The crux of their objection to the alternative process provided in the final interim regulations is that their notice to HHS of their religious objection to the Mandate "trigger[s] government action modifying their

own plans and causing their third party administrators … or group insurers to deliver [contraception] services to their plan beneficiaries." *Id.* at 9. This, in their view, constitutes "material cooperation with evil because of the cascading effects." *Id.* at 17-18.

In response, Defendants argue that the Sixth and Seventh Circuits (and now the D.C. Circuit) have rejected the "trigger theory" that Plaintiffs advance. Doc. No. 36, at 14. In *University of Notre Dame v. Sebelius*, 743 F.3d 547, 554 (7th Cir. 2014), the Seventh Circuit held that the certification requirement, as it stood prior to the August 2014 augmentation, did not substantially burden the plaintiff's religious beliefs because "[f]ederal law, not the religious organization's signing and mailing the form, requires health-care insurers, along with third-party administrators of self-insured health plans, to cover contraceptive services." *Accord Priests for Life v. United States Dep't of Health & Human Servs.*, 772 F.3d 229, 252-53 (D.C. Cir. 2014); *Michigan Catholic Conference & Catholic Family Servs. v. Burwell*, 755 F.3d 372, 389 (6th Cir. 2014). The Eleventh Circuit disagrees. *See Eternal World Television Network, Inc. v. Sec'y of the United States Dep't of Health & Human Servs.*, 756 F.3d 1339, 1347 (11th Cir. 2014) ("Even if the form alone does not 'trigger' coverage—whatever that means—it is undeniable that the United States has compelled the Network to participate in the mandate scheme by requiring the Network not only to sign but also to deliver the form to its third-party administrator of its health insurance plan.").

The Court agrees with the Eleventh Circuit and finds its conclusion equally applicable to the August 2014 interim final rules. Regardless of whether the federal government has an independent obligation to provide contraceptive services when CBA

members decline to provide it, and also decline to participate in the notification process, the analysis remains the same. "First, we must identify the religious belief …. Second, we must determine whether this belief is sincere…. Third, we turn to the question of whether the government places substantial pressure on the religious believer." *Hobby Lobby*, 723 F.3d at 1140. The question of what, if anything, is actually required to activate employees' right to cost-free contraceptive services is inapposite. "[T]his is not a question of legal causation but of religious faith," *Notre Dame*, 743 F.3d at 566 (Flaum, J., dissenting), and the Court is not authorized "to say that the religious beliefs of the plaintiffs are mistaken or unreasonable," *Hobby Lobby*, 134 S. Ct. at 2757.

This case is distinguishable from both *Hobby Lobby* and *Wheaton College*, because in neither of those cases did the plaintiffs argue that they had a religious objection to the act of notifying the government of its religious objection. Defendants' repeated assertions that CBA's members are "effectively exempt," *see, e.g.*, Doc. No. 36, at 5, demonstrate their misunderstanding regarding the religious belief at issue. Although CBA members may be "effectively exempt" from directly providing contraceptive services if they comply with the notification requirement, they are not exempt from the notification requirement itself. This requirement also violates their religious beliefs because, they argue, it requires them to be complicit in indirectly providing their employees with contraceptive services.

Thus, under the challenged regulations, CBA members have five options from which to choose: (1) directly provide contraceptive coverage to their employees; (2) refuse to provide the coverage and face severe monetary penalties; (3) completely drop

their employees' health plans and face monetary penalties for doing so; (4) self-certify that they qualify for the accommodation by filling out EBSA Form 700; or (5) notify HHS that they qualify for the accommodation and provide the required information. Because options (1), (4), and (5) violate their religious beliefs, the only alternatives offered in options (2) and (3), paying monetary penalties, create a Hobson's choice for CBA members. *See Hobby Lobby*, 723 F.3d at 1141.

The August 2014 augmented regulations thus do not remove the substantial burden placed on CBA members by the notification requirement. There remains a substantial burden on the religious beliefs of CBA members that meet the definition of "eligible organization" for purposes of the accommodation ("Group II members"), as well as those members that are closely-held for-profit corporations that are neither exempt from the Mandates, nor qualify for the accommodation ("Group III members").[3]

**2. Compelling Interest**

Because Plaintiffs have made a strong showing of a substantial burden, Defendants must now show that they are likely to pass the compelling interest test. In *Hobby Lobby*, the Tenth Circuit held that the government's articulated interests "in public health and … gender equality … do not satisfy the Supreme Court's compelling interest standards." 723 F.3d at 1143-44. In the same case, the Supreme Court assumed without deciding that the regulations at issue satisfy the compelling interest test. *Hobby Lobby*,

---

[3] *See Hobby Lobby*, 134 S. Ct. at 2775. Consistent with its June 4 Order, the Court finds that those CBA members that meet the ACA's definition of "religious employer," and are thus exempt from the Mandate ("Group I members"), are not substantially burdened by the Mandate or the subsequent regulations. *See Catholic Benefits*, 2014 WL at *7, 10.

134 S. Ct. at 2780. Defendants argue that in *Hobby Lobby*, five Justices found the compelling interest test to be satisfied. Doc. No. 36, at 16.

In *Hobby Lobby*, Justices Ginsburg, Sotomayor, Breyer, and Kagan dissented and concluded that the government satisfied the compelling interest test. *Hobby Lobby*, 134 S. Ct. at 2799 (Ginsburg, J., dissenting). Whether Justice Kennedy came to the same conclusion in his concurrence is unclear. He devoted one paragraph to the issue, and stated that HHS "makes the case that the Mandate serves the Government's compelling interest in providing insurance coverage that is necessary to protect the health of female employees." *Id.* at 2785 (Kennedy, J., concurring). He further noted that "[t]here are many medical conditions for which pregnancy is contraindicated." *Id.* at 2786 (citation omitted). Even assuming Justice Kennedy did find that the government had established a compelling interest, because the other Justices in the majority simply assumed that fact without fully debating the issue, this Court is not bound by the Justices' conclusions on this issue. *See Cent. Virginia Cmty. College v. Katz*, 546 U.S. 356, 363 (2006) ("[W]e are not bound to follow our dicta in a prior case in which the point now at issue was not fully debated" (citation omitted)). Thus, the Tenth Circuit's ruling that the government has not satisfied the compelling interest test is binding on this Court, and Plaintiffs have consequently shown a likelihood of success on the merits of their RFRA claim.

B. **Likelihood of Success on the Merits Under the Establishment Clause and the APA**

Because the Court has found that Plaintiffs have shown a likelihood of success on the merits under RFRA, the Court declines to address their claims under the Establishment Clause and the APA.

C. **Remaining Requirements for Preliminary Injunction**

In addition to showing a likely RFRA violation, Plaintiffs must also satisfy the three remaining requirements for a preliminary injunction. First, "establishing a likely RFRA violation satisfies the irreparable harm factor." *Hobby Lobby*, 723 F.3d at 1146 (citations omitted). Second, the harm to CBA members outweighs any harm to Defendants' interest in enforcing the challenged regulations. Defendants contend that there is an inherent harm in prohibiting them from enforcing the challenged regulations against CBA members. Doc. No. 36, at 27. Yet Defendants have already exempted health plans covering millions of others, including those plans of many religious organizations. *Hobby Lobby*, 723 F.3d at 1143. This brings into question how tangible the harm could possibly be by the Court's entry of a preliminary injunction in Plaintiffs' favor. By comparison, the harm posed to these Plaintiffs absent relief is quite tangible—they will either face severe monetary penalties or be required to violate their religious beliefs. Finally, "it is always in the public interest to prevent the violation of a party's constitutional rights," and the same is true of RFRA violations. *Hobby Lobby*, 723 F.3d at 1147 (quoting *Awad*, 670 F.3d at 1132) ("[A]lthough RFRA violations are not constitutional violations, Congress has given RFRA similar importance by subjecting all

subsequent congressional enactments to a strict scrutiny standard of review unless those enactments explicitly exclude themselves from RFRA." (citing 42 U.S.C. § 2000bb-3(b))). Accordingly, Plaintiffs have satisfied all four requirements for a preliminary injunction.

## IV. Extension Beyond Current CBA Members

Plaintiffs ask the Court to grant preliminary injunctive relief for all present and future CBA Members that have joined or will join CBA after June 4, 2014. Doc. No. 31, at 32. Consistent with its June 4 Order, the Court extends preliminary relief only to current CBA members that fit within Groups II and III.[4] That is, only current members of CBA that either qualify for the accommodation as nonprofit religious employers, or those members that are non-exempt closely-held corporations and thus do not qualify for the accommodation, are entitled to preliminary relief.

## V. Conclusion

In accordance with the foregoing, Plaintiffs' Motion for Preliminary Injunction is GRANTED in part and DENIED in part. Although Group I members of CBA are not entitled to preliminary injunctive relief, current Group II and Group III members of CBA are entitled to such relief based on Plaintiffs' RFRA challenge.

---

[4] All current Group II and Group III members of CBA were required to meet certain requirements in order to be eligible for membership, as set out in CBA's Articles of Organization and Bylaws. *See* Doc. No. 32, ¶¶ 36-39. The Court is satisfied that these tests have ensured the uniformity of belief among the current Group II and Group III members to which this preliminary relief will extend. If Defendants do not object to including within the scope of this preliminary injunction future CBA Group II and Group III members, they are directed to file such a notice with the Court.

## PRELIMINARY INJUNCTION

Defendants, their agents, officers, and employees, and all others in active concert or participation with them, are hereby ENJOINED AND RESTRAINED from any effort to apply or enforce, as to current members of the Catholic Benefits Association LCA who qualify for the accommodation (Group II members), as defined by 26 C.F.R. § 54.9815-2713A(a), 29 C.F.R. § 2590.715-2713A(a), and 45 C.F.R. § 147.131(b), or that are closely-held for-profit corporations that neither qualify for the "religious employer" exemption nor qualify for the accommodation (Group III members), the substantive requirements at issue in this case that are imposed by 42 U.S.C. § 300gg-13(a)(4) and its related regulations, including any penalties, fines and assessments for noncompliance with these provisions, until further order of the Court.

Defendants, their agents, officers, and employees, and all others in active concert or participation with them, are FURTHER ENJOINED AND RESTRAINED from any effort to apply or enforce the Mandate against group insurers and third-party administrators of current Group II and Group III members and from interfering with these members' attempts to arrange or contract for morally compliant health or stop-loss coverage or related services for their employees.

IT IS SO ORDERED this 29th day of December, 2014.

_____
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE